IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| KENNETH PLAZA | § | CASE NO: 05-32524 |
| Debtor(s) | § | |
| | § | CHAPTER  7 |

## MEMORANDUM OPINION

The Trustee asks this Court to allow assumption of a contingency fee agreement between the Debtor and Shane Kadlec [doc. no. 18].  As part of that assumption, the Trustee asks that the Court approve full payment of Kadlec's attorney's fees.  Based on the findings of fact and conclusions of law stated below, the Court does not approve assumption of the contingency fee agreement by the estate.  Kadlec and the Trustee are directed to provide further information consistent with this memorandum opinion so that the Court can determine the proper treatment of Kadlec's *quantum meruit* claim.  A separate order will issue.

### Background

The Debtor, Kenneth Plaza, was involved in an automobile accident on August 13, 2002. Plaza was struck by an SUV operated by Levenia Burns.  Plaza hired Shane Kadlec, of Ivey & Kadlec to represent him in dealing with U.S. Auto Insurance Services, Inc., the liability carrier for Burns.  Plaza's agreement with Ivey & Kadlec was a contingency fee agreement, granting the firm one-third of any gross recovery if the claim was settled prior to filing suit, and if suit was filed, granting the firm forty percent of any gross recovery.

On February 29, 2004, Plaza filed suit against Burns in county civil court.

On February 19, 2005, Plaza filed for chapter 7 bankruptcy.  Plaza was granted a discharge on August 2, 2005.

In 2006, with discovery complete in Plaza's county civil suit, counsel for Burns offered to settle the matter for $20,048. Plaza agreed to settle. However, prior to finalizing the settlement, Plaza discovered that certain medical bills resulting from injuries sustained in the accident had not yet been resolved. Kadlec contacted the chapter 7 trustee, as well as Plaza's earlier bankruptcy attorney, and the parties in interest agreed to reopen the chapter 7 case.

On October 19, 2006, the Trustee filed an application to compromise the automobile claim, as well as a request to pay Kadlec the contingency fee in accordance with the employment agreement entered into in 2002.

At a hearing on the motion to compromise and pay attorney's fees, the Court raised concerns over a provision of the contingency agreement that was arguably unconscionable. Kadlec was asked to brief the issue of unconscionability, as well as whether a trustee may assume a contract with an unconscionable clause.

### The Consent Clause

The contingency agreement between Plaza and Kadlec includes the following clause ("Paragraph 11"):

> The client will not make settlement of the mentioned claim, or accept any sum as reimbursement for any of the client's injuries or expenses, without the attorney's consent.

(Contingency fee agreement, ¶ 11 at 3).

At the hearing on the motion to pay fees the Court expressed concern that this clause takes the final decision regarding settlement away from the client, in favor of the attorney. The clause requires the attorney's *consent* to any settlement or acceptance of a reimbursement amount. In this way, the clause amounts to a veto power for the attorney over a settlement. This allocation of power appears to be directly at odds with the well accepted principle that it is the

client who has exclusive control over whether to settle, compromise or adjust the cause of action. *See e.g., C.I.R. v. Banks*, 543 U.S. 426, 436 (2005)("The client may rely on the attorney's expertise and special skills to achieve a result the client could not achieve alone. That, however, is true of most principal-agent relationships, and it does not alter the fact that the client retains ultimate dominion and control over the underlying claim. The control is evident when it is noted that, although the attorney can make tactical decisions without consulting the client, the plaintiff still must determine whether to settle or proceed to judgment and make, as well, other critical decisions.")

In his brief supporting the payment of fees, Kadlec first argues that Paragraph 11 is not unconscionable because an attorney may acquire a lien on a client's cause of action to secure fees or expenses as well as contract for a contingency agreement.  The Court does not understand how this argument addresses Paragraph 11's apparently impermissible allocation of decision making between attorney and client.

Kadlec goes on to argue the practicality of Paragraph 11:

> The language in paragraph 11 requires that the client agree to inform the lawyer of his intention of settling the claim; thereby, giving the attorney the opportunity to properly negotiate and conclude any potential settlement of the client's claims…. This aspect of a lawyer's representation is essential for the attorney to properly effectuate any settlement, so as to be sure that the settlement agreement and release are appropriately worded, for the protection of both the client and his counsel.

(Brief, ¶ 16).

The Court understands the contribution an attorney makes in negotiating a settlement. However, Kadlec understates the effect of Paragraph 11.  The clause does more than require that the client inform the lawyer of his intention to settle.  The plain language of the clause requires that the client not settle the claim without the consent of the attorney.

Next, Kadlec argues that consent clauses in contingency fee contracts have long been recognized as valid in Texas.  Kadlec directs this Court to *Hill v. Cunningham*, 25 Tex. 26 (1860).  That court stated:

> … [W]here the attorney contracts with the client for a contingent fee, to depend upon the result of the suit, if the client compromises the suit without consulting the attorney, and without the attorney's consent, then the attorney will be entitled to recover the whole amount of the fee in like manner as if the contingency had transpired, upon which the payment of the fee was made to depend. In such cases it would become the duty of the client to consult the attorney, and to obtain his consent to the compromise of the suit upon such definite agreement in relation to the attorney's fee as the parties might think proper to make…. Cases might undoubtedly present themselves in which the attorney would not be permitted to control the suit, so as to prevent a compromise, or in other words, where the attorney would not be permitted to continue the litigation to the injury of the client.

*Hill*, 25 Tex. at *5.

The Court does not find *Hill* applicable to the question currently under consideration. *Hill* deals with enforcement of a contingency fee agreement in a case that was settled by the parties themselves, without attorney consent.  Whether an attorney can enforce a contingency agreement against a client who has settled without the attorney's knowledge is not the question before this Court.  The present issue is whether an attorney can contract for a veto power regarding a client's choice to settle a lawsuit.

To whatever extent *Hill* can be read to grant an attorney the power to withhold the right to comprise from a client, it no longer accurately reflects the law.  *See e.g., C.I.R. v. Banks*, 543 U.S. at 436.  Additionally, since *Hill* was decided in 1860, the Texas State Bar has adopted various rules of professional ethics which govern the relationship between attorney and client. Today, the conduct of attorney behavior in Texas is governed by the Texas Disciplinary Rules of Professional Conduct.

Disciplinary Rule 1.02 provides that:

(a) Subject to paragraphs (b), (c), (d), and (e), (f), and (g), a lawyer shall abide by a client's decisions:

(1) concerning the objectives and general methods of representation;

(2) whether to accept an offer of settlement of a matter, except as otherwise authorized by law;

(3) In a criminal case, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial, and whether the client will testify.

TEXAS DISCIPLINARY RULES OF PROF'L CONDUCT R. 1.02 (1990).

Hence, according to the Texas Disciplinary Rules, it is the lawyer who must abide by the client's decision regarding settlement, not vice versa. Similarly, the ABA Committee on Professional Ethics issued a formal opinion quoting the following with approval:

A clause in a retainer agreement prohibiting the client from settling without the attorney's consent is void as against public policy; as is an agreement with the client that no part of the retainer shall be refunded in the event of a reconciliation between the parties.

ABA COMM. ON ETHICS AND PROF'L RESPONSIBILITY, FORMAL OP. 326 (1970)(quoting Henry S. Drinker, *Legal Ethics*, 101 (Columbia Univ. Press 1953)).

The Fifth Circuit has also noted that the consensus view is that clauses such as Paragraph 11 are against public policy: "Clauses in a contract between attorney and client which prohibit a settlement by the client without his attorney's consent are generally held to be unenforceable as against public policy." *Lewis v. S.S. Baune*, 534 F.2d 1115, 1122 (5th Cir. 1976)(citations omitted); *Singleton v. Foreman*, 435 F.2d 962, 970 (5th Cir. 1970)("Moreover, it is clear that an attorney never has the right to prohibit his client from settling an action in good faith."). Essentially, giving an attorney decision making power over whether to settle a case or proceed to trial, could force a litigant to hazard the outcome of litigation in order to secure a higher contingency fee for the attorney. *Sentco, Inc. v. McCulloh*, 84 So. 2d 498, 499 (Fla. 1956). "A client by virtue of a contract with his attorney is not made an indentured servant, a puppet on counsel's string, nor a chair in the courtroom. Counsel should advise, analyze, argue, and

recommend, but his role is not that of an imperator whose edicts must prevail over the client's desire.  He has no authoritarian settlement thwarting rights by virtue of his employment." *Singleton*, 435 F.2d at 970.

Based on the reasoning above, the Court finds that Paragraph 11 is unconscionable.  The Court now examines whether the trustee can assume the contingency fee agreement with or without the objectionable clause.

**Assumption of the Contract**

Kadlec suggests that if Paragraph 11 is found to be unconscionable, the Court should strike the objectionable Paragraph 11, and then proceed to allow the Trustee to assume the amended contract.

Kadlec relies on *Hoover Slovacek LLP v. Walton*, 206 S.W.3d 557 (Tex. 2006) for the principle that if a contract or term thereof is unconscionable at the time the contract is made, a court may enforce the remainder of the contract, or may limit the application of the objectionable clause.  Kadlec also cites *Williams v. Williams*, 569 S.W.2d 867, 871 (Tex. 1978).

Both *Hoover* and *Williams* support the proposition that an unconscionable provision of a contract (contingency fee and premarital agreement, respectively) may be severed, and the remaining contract may be enforced.  However, the question in this case is not whether Paragraph 11 may be severed and the contingency fee agreement enforced.  The question is whether Paragraph 11 may be severed and the remaining agreement may be *assumed*.  The Court finds that severance and assumption is not allowed.

The general rule in bankruptcy is that a contract must be assumed or rejected in its entirety.  *In re National Gypsum Co.,* 208 F.3d 498, 506 (5th Cir. 2000); *Stewart Title Guaranty Co. v. Old Republic Nat'l Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996).  Kadlec has produced

no authority that would allow this Court to sever the objectionable paragraph and then allow the remaining, amended contract to be assumed. Consequently, the Court cannot and will not strike Paragraph 11 in order to produce a contract acceptable for assumption.

Assumption or rejection of a contract in bankruptcy is "subject to the court's approval…." 11 U.S.C. § 365(a). The result of the reasoning above is that the Trustee is asking this Court to approve the assumption of a contract that is unconscionable because it violates basic tenets of the attorney-client relationship. The Court will not approve such a contract.

### Arguments Based on Equity and the Common Fund Doctrine

Kadlec argues that if the Court finds Paragraph 11 objectionable and is unable to sever it, attorney's fees should still be paid according to the contingency fee agreement based on equity and the common fund doctrine. Kadlec primarily relies on *In re Willis*, 143 B.R. 428 (Bankr. E.D. Tex. 1992), for these arguments.

This Court has specifically rejected the *In re Willis* case as Kadlec is attempting to apply it. In *In re Patton*, 2007 Lexis 222 (Bankr. S.D. Tex. January 19, 2007), the Court stated:

> In this case, awarding priority based on the common fund doctrine is not consistent with the priority scheme set out in the Bankruptcy Code. Any such inconsistency must be settled in favor of the Code. "Section 507 is intended to be the exclusive list of priorities in bankruptcy. Priorities are to be set by Congress. Courts are not free to fashion their own rules of superpriorities or subpriorities within any given priority class." 3 COLLIER ON BANKRUPTCY ¶ 507.02, p. 507-11 (15th ed. 1992). As recently noted by the Supreme Court, "preferential treatment of a class of creditors is in order only when clearly authorized by Congress." *Howard Del. Svc. v. Zurich American Ins.,* 126 S.Ct. 2105, 2109 (2006).
>
> This Court, unlike *Willis*, does not see how the common fund doctrine can be used to circumvent the distribution scheme outlined in the Code. The doctrine is useful in establishing how and whether an attorney is paid in a common fund scenario. Once that is determined, an attorney's claim to funds must be paid only in accordance with the bankruptcy priorities established by Congress. Much like the court in *In re Coron*, 161 B.R. 449, (Bankr. N.D. Ill. 1993), "to the extent *Willis* can be read to stand for doctrine beyond its factual setting, this Court finds

it inconsistent with the statutory distribution scheme under the Bankruptcy Code ….” *In re Coron*, 161 B.R. at 452.

Finally, the Trustee argues that equity requires that Johnson receive a 100% payout on his contingency fee claim. The Trustee again cites *Willis*, which states that “had it not been for the efforts of counsel, there would be no controversy for this Court to decide.” *Willis*, 143 B.R. at 433. This Court disagrees with the conclusion that equity should result in full payment of Johnson’s claim.

It is the nature of bankruptcy that creditors are often not paid in full. By all accounts Johnson performed his work skillfully and efficiently. Yet, the Court is confident that many creditors who diligently supply services or funds do not receive the full payment they deserve. The most analogous example for this case is an attorney who works on an hourly fee basis. When such an attorney labors pre-petition on non-bankruptcy matters, the treatment of that attorney’s claim for fees is clear: the attorney has an unsecured claim for the fees earned, and will share pro-rata in any distribution made to unsecured creditors in the same class.

Compensation of professionals is generally governed by § 330 of the Bankruptcy Code. An attorney may be awarded “a reasonable compensation for actual, necessary services rendered by the … attorney.” 11 U.S.C. § 330(a)(1)(A). Section 330 only applies to professionals retained under § 327. Section 327 authorizes the retention of an attorney “to represent or assist the trustee in carrying out the trustee’s duties under this title.” 11 U.S.C. § 327(a). Consequently, only an attorney retained under § 327 may receive compensation pursuant to § 330. *In re Foster*, 247 B.R. 731, 732 (Bankr. S.D. Ohio 2000).

Section 328 authorizes the trustee to retain counsel on a retainer, hourly or contingent fee basis. 11 U.S.C. § 328(a).

An attorney paid on an hourly basis who is not retained under § 327 holds only an unsecured claim. *In re Foster*, 247 B.R. 731, 733 (Bankr. S.D. Ohio 2000) (“Therefore, to the extent [counsel] has a claim for hourly fees for services performed for the debtor prior to the bankruptcy filing … she may have an unsecured claim against the bankruptcy estate.”); *In re Castle Ventures, Ltd.*, 167 B.R. 758 (Bankr. E.D.N.Y. 1994) (law firm’s prepetition fees rendered in connection with unrelated matter allowed as unsecured claim); *In re Powell*, 314 B.R. 567, 572 (Bankr. N.D. Tex. 2004) (“The portion of the work performed pre-petition constitutes a claim against the bankruptcy estate. The portion of the work performed post-petition constitutes an administrative expense ….”).

The Trustee has not provided any reasoning to support the proposition that a lawyer working on a contingency fee basis should receive superior treatment to that received by a lawyer working on an hourly basis. Indeed, § 328(a) is structured to place attorneys who do post-petition work for the estate on the same

> footing whether the attorneys are retained on a retainer, hourly or contingent fee basis. The Court finds the situation presented by the Trustee's motion to be analogous. There is no reason to contravene Congress' equitable determination that there should be post-petition equality between hourly and contingent fee lawyers by imposing a judicial determination that there should be pre-petition inequality between contingent and hourly fee lawyers.
>
> Equity demands that an attorney working on a contingency fee basis be treated the same as other persons holding general unsecured claims. Distributions should be made in accordance with the Code's priority scheme. "There is no authority to pay counsel first and thereby spread the costs of litigation based on the Court's view of fairness, because the Bankruptcy Code's distribution scheme will achieve the result deemed by Congress to be fair." *In re Coron*, 161 B.R. at 453.

*In re Patton*, 2007 Lexis at *10-12.

Based on the Court's conclusions in *Patton*, Kadlec's arguments for full payment of fees based on equity and the common fund doctrine are rejected.

Finally, Kadlec argues that the doctrine of *quantum meruit* allows for the payment of attorney fees and expenses from the settlement. *Quantum meruit* is an equitable remedy which exists independent of a contract. *Vortt Exploration Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990). The remedy is generally only available when there is no contract governing the services rendered. *Id.* To recover under the principle of *quantum meruit* a claimant must show that (1) valuable services were rendered; (2) for the person sought to be charged; (3) which services were accepted by the person sought to be charged; and (4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff was expecting payment for such service from the person sought to be charged. *Id.* at 944.

The Court has disallowed assumption of the contingency fee agreement. However, the Court accepts the representations of the parties as sufficient evidence that services were rendered by Kadlec on behalf of, and accepted by, Plaza, and Plaza was aware that Kadlec expected

payment.  In other words, the Court finds that *quantum meruit* is a sufficient basis on which Kadlec may base his claim for compensation.

The measure of recovery under a claim of *quantum meruit* is the reasonable value of the services provided.  *Diaz v. Atty Gen. of State of Tex.*, 827 S.W.2d 19, 23 (Tex. App. – Corpus Christi 1992, no writ).  The Court finds that personal injury cases such as the one handled by Kadlec on behalf of Plaza are often governed by contingency fee agreements.  Absent the unconscionable Paragraph 11, the Court finds that the contingency fee agreement in this case provides for the reasonable value of the services rendered.  Thus, the Court will allow Kadlec a claim in the amount due to him under the contingency fee agreement.

While the Court finds that Kadlec has a basis for his claim for compensation, this is still a claim which is subject to Plaza's bankruptcy proceeding.  Kadlec's *quantum meruit* claim for services rendered must be treated in accordance with the Bankruptcy Code.  An unsecured pre-petition *quantum meruit* claim must be treated the same as other pre-petition unsecured claims. Any work performed by Kadlec post-petition, must be treated like any other post-petition claim which has benefited the estate.

Kadlec has not provided the Court with sufficient basis to determine what portion of his services were rendered pre-petition versus post-petition.  In order to effectuate the proper treatment of the claim, Kadlec and the Trustee must submit evidence sufficient for the Court to determine what work Kadlec performed pre-petition and post-petition.

## Conclusion

The Court finds that Paragraph 11 is unconscionable.  A contract must be assumed or rejected in full.  The Court will not allow the Trustee to assume a contract that is unconscionable. The contract must be rejected.  Kadlec has a claim for his contingency fee based on *quantum*

*meruit*.  Kadlec must submit evidence to the Court, sufficient to allow the Court to determine what work was performed pre-petition versus post-petition.

Signed at Houston, Texas, on February 23, 2007.

MARVIN ISGUR
United States Bankruptcy Judge